John May and A. M. Suthon, both of New Orleans, for appellant.

Harry M. Mayo, Jr., of New Orleans, for appellee.

JANVIER, J.

O'Kelley claims reimbursement in the sum of $292.10 for damages sustained by his Pierce Arrow automobile in an intersectional collision at the corner of Thalia street and the driveway of Claiborne avenue used by vehicles proceeding in an uptown direction.

O'Kelley was himself driving his automobile, going uptown, and defendant's truck was being operated by his son on Thalia street towards the river.

From a judgment for plaintiff, as prayed for, defendant has appealed.

■ We are convinced that defendant's truck was driven into the intersection directly into the path of the on-coming Pierce Arrow after it was too late for the latter to be stopped or turned aside and that the latter, proceeding at a lawful speed, was, under the traffic ordinance of the city of New Orleans, No. 7490, C. C. S., entitled to the right of way, by reason of the superior right accorded by the ordinance to vehicles on Claiborne avenue, at that point.

It is contended, however, on behalf of defendant, that plaintiff was himself violating a provision of the ordinance, in that he was driving near the neutral ground, which was to his left instead of alongside the right hand curb. This fact is admitted, and it necessarily follows that in that regard he (O'Kelley) was guilty of a technical violation of the ordinance.

We are unable to attach to the violation any importance, as we do not see that there was any causal connection between the said violation and the subsequent collision, except the mere chance that the two vehicles happened to arrive at the spot, at which the collision occurred, at exactly the same time, whereas possibly if one of them had been driving along a different line of the roadway on which he was proceeding, they might not have reached at the same time the spot at which they actually did collide. It is true that since the collision occurred near the neutral ground there must have been open space behind the truck through which space possibly the Pierce Arrow might have passed had it been near the curb, but this is no more than saying that if the Pierce Arrow had not been on the street at all it is certain that there would have been no accident. There was no more causal connection between the location of the Pierce Arrow on the left of the street and the ultimate collision than there was between the actual presence of the Pierce Arrow on the street at all and the final result. It might well be ar-gued, in answer to this contention of defendant, that even if the Pierce Arrow had been alongside the curb, nevertheless the accident would have happened if the speed of the truck had been a little bit less than it was.

■ Unless there is result from technical violation of law, such violation plays no part in determining legal liability.

"It is, then, not sufficient for recovery to show that there has been a technical violation of law, but it must also appear that, as a natural result of the violation, the accident occurred; that there was causal connection between the two." Michael Millannis et al. v. Mervin Fatter, Sr., 138 So. 878, 880, decided by the Court of Appeal, Parish of Orleans, January 11, 1932.

It is argued that the amount claimed is excessive. On this score we see no error in the findings of the trial court.

The judgment appealed from is affirmed.

Affirmed.

## HOLLAND v. HOLLAND. *

### No. 4158.

Court of Appeal of Louisiana. Second Circuit. Second Division.

March 16, 1932.

118

Dimick & Hamilton, of Shreveport, for appellant.

R. H. Lee, of Benton, for appellee.

TALIAFERRO, J.

Plaintiff, a son of defendant, brings this suit for an accounting and settlement of the business affairs and transactions arising from their relation as landlord and tenant, on the half cropper basis, for the years 1929 and 1930. Defendant owns farm lands in Bossier parish. He secured parole of plaintiff from the Arkansas Penitentiary, where he was serving a sentence for manslaughter, on or about February 1, 1928, and leased him some land for that year. Plaintiff lived with his father until December 24th, at which time he married. During the year 1928, defendant furnished plaintiff with cash money, clothes, shoes, etc., and boarded him; and during the years 1929 and 1930 furnished him with cash money, groceries, etc., to enable him to live and make crops. Crops of cotton were produced and gathered for each of these years and some corn and potatoes for the year 1930. After the cotton was ginned, defendant handled it, shipping and selling at will. He rendered no accounts to plaintiff for either year's business. After the crops of 1930 had been gathered and cotton turned over to defendant, their relations became strained and defendant moved from the leased premises. This suit was filed in following January. He and his wife testify that defendant ordered them away and refused to allow them to remove their part of the corn and potatoes and household effects. There is other evidence and many circumstances in the case to support this charge.

Plaintiff sets up various and sundry instances of mistreatment of, and acts of injustice towards, him by his father, but these need not be further mentioned in a discussion of their business affairs which this suit was brought to finally determine. He prays for judgment for such amount as the evidence shall establish defendant is due him on accounts; that his half ownership in and of the undisposed of crops of 1929 and 1930 be recognized; that same be sold according to law, and one-half of the proceeds of sale be paid over to him.

On suggestion of plaintiff, a judicial sequestration issued, and the undisposed of crops of 1930 and one bale of cotton of the crop of 1929 were seized by the sheriff.

Defendant prays that plaintiff's demands be rejected and his suit dismissed; but, in the alternative, prays for judgment against him for alleged balance due on accounts of years 1928, 1929, and 1930, amounting to $536.15, subject to be credited with plaintiff's interest in the cotton, cotton seed and corn sequestered herein when sold. He attaches to his answer what purports to be an itemized account against plaintiff for the years 1928, 1929, and 1930. These show that for the year 1928 plaintiff was in arrear to the extent of $283.65; for the year 1929 he was ahead $61.05, and for the year 1930 he was behind with defendant to the extent of $268.

The district court found that defendant was due plaintiff $132.27 on account for the three years involved, and recognized plaintiff as owner of undivided half interest in the 7 bales of cotton and the cotton seed sequestered, and in the four bales of cotton in hands of the Farm Bureau at New Orleans, and ordered same sold, according to law, and the proceeds divided between plaintiff and defendant. Defendant was cast for all costs of suit except those to be incurred in selling the jointly owned property, which were ordered to be paid equally by the parties by charging same against the proceeds of sale.

Defendant has appealed from this judgment.

It will be observed that plaintiff confined his action for accounting to the years 1929 and 1930, but defendant undertook to extend the controversy to the year 1928. Evidence by defendant touching the 1928 account was objected to by plaintiff but overruled by the court. Both sides were permitted to go into the 1928 account as fully as they did the accounts for 1929 and 1930. Plaintiff elicited testimony concerning the 1928 account without reservation, and in his brief makes no reference to his objection to the evidence of defendant about this account, nor of the courts ruling thereon. We assume the point has been abandoned. It is better, perhaps, that this has been done, as the evidence before us is sufficient to enable us to adjudicate the rights of both sides for the three years.

It is regrettable that a controversy of this kind, between father and son, should find its way to court. To add to the unpleasantness of the matter, the testimony is often very conflicting, and, where records are used as evidence, they are generally crude and unskillfully kept. And so we find it in this case. Defendant kept no books of account covering his dealings with defendant, and defendant's wife, untrained in such matters, acted as his bookkeeper.

The account for the year 1928 has been proven by defendant's wife, who produced the record of same contained in a small notebook. Her testimony is corroborated in a general way by that of defendant. The total debit against plaintiff is $466.50, which includes $350 paid to attorneys for plaintiff's benefit. In addition to said account, defendant undertook to charge plaintiff with board

for entire year 1928 at rate of 50 cents per day, and for his washing at rate of 25 cents per week for that year. Plaintiff challenges the charge for board, and says that his father agreed to board him without compensation in return for work to be done by him on the farm. The lower court did not think the testimony sustained defendant's contention on this score and rejected the charge. We agree with this ruling. It is shown that plaintiff began to live with his father on February 1; that he was absent during the summer for three weeks and married on December 24th. He is charged with board for 365 days or $182.50. Obviously this charge is an afterthought. If the record had been kept during the year, the month of January and the periods of plaintiff's absence would not have been charged for.

■ Plaintiff says there was no understanding about the charge for his washing; that it was not mentioned. He does not deny that this service was done for him. The lower court allowed $13 for the service, being 25 cents per week for the entire year 1928. This should have been restricted to not more than eleven months, as plaintiff was not at his father's place at all during the month of January.

Plaintiff contends he produced and gathered 14 bales of cotton in 1928. We think he is in error to the extent of 2 bales. The evidence otherwise accounts for only 12 bales for this year. One bale was sold and price divided between plaintiff and defendant. Another bale sold for $100.31 all of which plaintiff received. The other 10 bales netted $957.53, one-half of which amount, or $478.76, belonged to plaintiff. His interest in the sale of the seed from this year's crop was $66.60. Defendant received proceeds of sale of the seed and of the 10 bales of cotton. Plaintiff is also entitled to be credited with price of one horse of his sold to or by defendant.

The account between the parties for 1928, in view of the foregoing, should be:

"Plaintiff's credits:

| | | |
|---|---|---|
| Half of net proceeds of sale of 10 b/c | $478.76 | |
| Half of net proceeds of sale of cotton seed | 66.60 | |
| Price of horse | 50.00 | |
| Total | $595.36 | $595.36 |

Plaintiff's debits:

| | | |
|---|---|---|
| Half of price of one b/c sold | $ 50.15 | |
| Account | 466.50 | |
| Washing 11 mos | 12.00 | |
| Total | $528.65 | $528.65 |
| By balance | | $ 66.71 |

On the account of 1928, attached to defendant's answer, there appears a charge of $38 for cash advanced on attorney's fees; but, as this charge was not on the account of $466.50 against plaintiff, and has not been satisfactorily proven to be correct, and as there is quite a substantial amount charged to plaintiff in the account, which we have accepted, as attorney's fees, we think this item should be disallowed. It was rejected by the lower court.

Plaintiff produced and gathered 7½ bales of cotton in the year 1929. One bale of this crop was not disposed of. It was seized in this case.

We have studied the account for this year filed by defendant in the light of the testimony in the case, and have reached the conclusion that it correctly reflects the results of their dealings for that year, save as to a charge of $200 for cash, which we have disallowed. We do not think this debit has been proven as a liability of the plaintiff. The account submitted by defendant, eliminating the charge of $200, is as follows:

Credits:

| | | |
|---|---|---|
| One half of n. p. 6 bales cotton | $277.52 | |
| Cash | 20.00 | |
| Proceeds sale of cotton seed | 29.60 | |
| Cotton Picking | 26.11 | |
| Half interest in remnant b/c | 24.40 | |
| Half interest in remnant b/c seed | 2.19 | |
| Total | $379.82 | $379.82 |

Debits:

| | | |
|---|---|---|
| Grocery account, etc | $ 54.98 | |
| Price of one cow | 30.00 | |
| Amount paid cotton pickers | 33.79 | |
| Total | $118.77 | $118.77 |
| By balance | | $261.05 |

■ The charge of $200 on defendant's account, while described as "cash advanced," was sought to be explained as being the amount of a note of one Carrie Parish at a bank in Bradley, Ark., which defendant contends he paid at the request and for the account of plaintiff. He testified that the maker of this note was threatening to involve plaintiff in a breach of promise suit, and it was feared that it would result in his parole being revoked and he returned to prison. This seems to us to be rather a far-fetched proposition. Plaintiff admits he owed the Parish woman $200, but denies any connection with or interest in the bank note, and denies that he authorized his father to pay same for his account. Plaintiff married December 24, 1928. The note in question was dated March 30, 1929, and matured October 1st. A payment of $53.75 was made on it prior to June 15, 1929, as on that date defendant paid the balance of $146.65, receiving the note marked "paid."

The fact that this note being given more than three months after plaintiff's marriage tends to repel any suggestion that its payment for account of plaintiff was made to prevent a suit against him by the maker for breach of promise of marriage.

The maker of this note lived on defendant's farm, and there is an intimation in the record that their relations were extremely friendly, and this is suggested as a motive for payment of the note by defendant.

During the year 1930 plaintiff produced and gathered 15 bales of cotton, 130 barrels of corn, and 50 bushels of potatoes. Three bales of the cotton were sold and price di-. vided. Six bales were shipped to the Louisiana Farm Bureau in New Orleans, two of which had been sold when this case was tried, netting $115.75, one-half of which belonged to plaintiff. The remaining 6 bales were undisposed of and were sequestered in this case, along with 100 barrels of corn and 2,500 pounds of cotton seed. Plaintiff and defendant each "caught" seed from one bale of this cotton to feed to their cows. While the evidence is not clear on the question, it indicates that seed from 7 bales was sold by defendant, bringing $35.47 net (after deducting cost of ginning and wrapping). The cost of ginning and wrapping the other 8 bales was $26.55, presumably paid by defendant. The difference between this expense and amount received for seed sold is $8.92, one-half of which is due plaintiff.

Defendant's account for groceries, etc., against plaintiff for 1930, amounts to $227, including one charge of $37.50 for hauling 15 bales of cotton at $2.50 per bale. The lower court rejected this charge without assigning reasons for so doing. We think the charge not sufficiently proven as a liability of plaintiff, and reject it also, which leaves the balance of the account at $189.50. From the foregoing analysis of the 1930 transactions between the parties, and from the account filed by defendant with his answer, we have reconstructed this account, so far as the crops of 1930 have been liquidated. It is:

Plaintiff's credits:
15½ bu. of potatoes............................. $ 15.50
One half of n. p. 2 b/c sold by Farm Bureau.. 57.87
One half n. p. sale of cotton seed............. 4.46

Total ........................................ $ 77.83
Debits:
Account ...................................... $189.50

To balance ................................... $111.67

■ The lower court in arriving at defendant's indebtedness to plaintiff charged him with $50, the value of half interest in 1930 corn. This was error, as the corn, like some of the cotton, was undisposed of, and was seized by the sheriff.

Therefore, deducting this debit balance from the credit balances of the year 1928 and 1929, supra, leaves defendant indebted unto plaintiff to the extent of $216.59.

For the reasons herein assigned, the judgment of the lower court is amended by increasing the money judgment in favor of plaintiff and against defendant to $216.59, with legal interest from judicial demand, recognizing him as owner of an undivided half interest in the corn sequestered herein; and, as thus amended, said judgment is affirmed.